IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL ROY ARCHER, JR.,

    Plaintiff,

  v.

CITY OF PORTLAND; TOM POTTER,
Mayor of Portland; CITY OF
PORTLAND POLICE; DERRICK
FOXWORTH, Chief of Police;
OFFICER McDANIEL; OFFICER BROWN;
OFFICER EDGECOMB; and
OFFICER WEST,

    Defendants.

CV 05-25-BR

OPINION AND ORDER

    MICHAEL ROY ARCHER, JR.
    3338 SE 17th Ave.
    Portland, OR  97202

        Plaintiff *Pro Se*

    WILLIAM W. MANLOVE
    Deputy City Attorney
    Office of City Attorney
    1221 SW Fourth Ave., Room 430
    Portland, OR  97204

        Attorney for Defendants

1 - OPINION AND ORDER -

**BROWN, Judge.**

Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983 *pro se*. Currently before the Court is Defendants' Motion for Summary Judgment. On July 21, 2005, the Clerk of the Court provided Plaintiff with a Summary Judgment Advice Notice (#23). At a hearing on December 12, 2005, the Court gave Plaintiff a duplicate Summary Judgment Advice Notice. In addition, the Court gave Plaintiff several opportunities to file a response to Defendants' Motion for Summary Judgment, but Plaintiff failed to file a proper response. For the reasons that follow, the Court GRANTS Defendants' Motion and DISMISSES this action.

## FACTUAL BACKGROUND

The following undisputed material facts are taken from Defendants' Concise Statement of Facts, and are stated in the light most favorable to Plaintiff.

On January 30, 2004, the Portland Bureau of Emergency Communications ("BOEC") received a 911 call from Michael Archer, Sr. ("Mr. Archer"). Mr. Archer called to report that his son, the Plaintiff in this action, had attacked him and had a knife. BOEC quickly dispatched Portland Police Officers Brown, McDaniel, and West to the scene. Upon their arrival, Officers Brown and West immediately noticed Mr. Archer had blood draining from his left

2 - OPINION AND ORDER -

ear, and they saw his left cheekbone was swelling. The officers also noted Mr. Archer's torn shirt. Mr. Archer told the officers his son had assaulted and injured him, and had torn his shirt in the process. Mr. Archer also told the officers that his son had mental problems, had a knife, and had threatened him before fleeing.

The officers set up a search perimeter in the neighborhood and requested a police search dog to help find Plaintiff. Portland Police Officer Edgecomb arrived with his police dog. The officers searched for about an hour, but failed to find Plaintiff. They reconvened in front of Mr. Archer's apartment. Mr. Archer asked them to check the apartment to see if Plaintiff was inside.

Officers Brown, West, McDaniel, and Edgecomb (with his dog) found the front door ajar and entered the apartment. The officers shouted commands that they were going to search the apartment with a police dog and that Plaintiff needed to show himself with his hands visible to the officers. The officers received no response.

The officers approached a back bedroom and opened the door. From the doorway, they saw Plaintiff lying on the floor under a blanket or bedroll. The officers again commanded Plaintiff to show his hands. Officer Brown warned Plaintiff several times he would shoot Plaintiff with a "less lethal" shotgun if Plaintiff did not show his hands. Plaintiff refused.

3 - OPINION AND ORDER -

Officer Brown fired three bean bag rounds from his "less lethal" shotgun at Plaintiff's mid-section from a distance of 10-12 feet. Brown fired the first round because Plaintiff appeared ready to strike the police dog Officer Edgecomb had released into the room. Brown fired the second round after the first one deflected off Plaintiff's blanket or bedroll. Brown fired the third round after Plaintiff stood up and began to come towards Brown in the doorway.

Each bean bag round fired at Plaintiff was a small, square, canvas cloth sack about 1 ½ inches in length on all sides, filled with metal shot. Such rounds leave the barrel of the shotgun at approximately 280 feet per second. In contrast, a 9mm bullet from a Portland Police Bureau-issued Glock handgun leaves the barrel at about 950 or 1150 feet per second, depending on the grain of the bullet. Unlike a bullet fired from a gun, a bean bag round is not used to penetrate the skin of a person's body.

The Portland Police Bureau trained Officer Brown that a bean bag round fired from a "less lethal" shotgun is like an "extendable baton," an impact weapon used to deliver a strike to a designated part of the body. Officer Brown was trained to aim the bean bag round in the area between a person's chest and knees.

After Officer Brown fired the third bean bag round, Officers West and McDaniel moved forward into the room and tried to take control of Plaintiff's arms. Plaintiff refused to put his hands

4 - OPINION AND ORDER -

behind his back, despite repeated commands to do so. Plaintiff grabbed Officer West's wrist, apparently attempting to pull him to the floor. To stop Plaintiff's efforts, Officer McDaniel hit the side of Plaintiff's face with his fist, causing Plaintiff to release his hold on Officer West.

Plaintiff continued to struggle, until Officer West applied a Portland Police Bureau-approved reverse wrist lock to Plaintiff's left arm. Officer McDaniel applied leverage to Plaintiff's right arm to force Plaintiff to lie on the floor. Officers West and McDaniel handcuffed Plaintiff.

Officer West placed Plaintiff in his police car and transported him to jail, where he charged Plaintiff with Fourth Degree Domestic Assault, Menacing, and Resisting Arrest. Officer West found a knife in Plaintiff's bag when he was searching for Plaintiff's identification.

Plaintiff did not complain of any injuries during the encounter with the officers. He did, however, purportedly sustain a bruise on his upper left thigh, a black eye, a chip fracture in his left elbow, some bruises on his left arm, and an abrasion on his left cheek. With reasonable medical probability, the chip fracture to Plaintiff's elbow occurred from pulling and twisting forces being applied on both sides of the elbow. The chip fracture is a minor injury.

5 - OPINION AND ORDER -

Each police officer who applied force to Plaintiff has been trained by the Portland Police Bureau that the force or control techniques used were appropriate for the circumstances presented by Plaintiff's behavior and by Plaintiff's reported criminal acts.

Plaintiff did not provide a timely tort claim notice to the City of Portland.

## LEGAL STANDARDS

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id*.

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d

6 - OPINION AND ORDER -

1130, 1134 (9th Cir. 2000). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

A district court may not grant a motion for summary judgment solely because the opposing party has failed to file an opposition. *See Cristobal v. Siegel,* 26 F.3d 1488, 1494-95 & n. 4 (9th Cir. 1994) (unopposed motion may only be granted after the court determines that there are no material issues of fact). A grant of default summary judgment will, however, be proper so long as the movant's papers are themselves sufficient to support a motion for summary judgment or do not on their face reveal a genuine issue of material fact. *Cristobal*, 26 F.3d at 1520.

## **DISCUSSION**

Plaintiff alleges Defendants used excessive force in arresting him in violation of his rights under the Fourth Amendment. In addition, Plaintiff alleges state law claims of unlawful imprisonment and slander.[1] Defendants deny Plaintiff's claims, and assert affirmative defenses of failure to state a claim, qualified immunity, reasonable suspicion/probable cause,

---

[1]Plaintiff also alleged Defendants were engaged in a conspiracy to control Plaintiff's thoughts and actions though hypnosis. The Court, however, dismissed these hypnosis claims in an Order (#113) dated December 5, 2005.

7 - OPINION AND ORDER -

search incident to an arrest, justification, privilege, and good faith.

## I.   Failure to State a Claim Under 42 U.S.C. § 1983

To state a § 1983 claim, a plaintiff must allege facts showing the deprivation of a right, privilege or immunity secured by the Constitution or federal law by a person acting under color of state law.  *L.W. v. Grubbs*, 974 F.2d 119, 120 (9th Cir. 1992), *cert. denied*, 508 U.S. 951 (1993); *Collins v. Womancare*, 878 F.2d 1145, 1147 (9th Cir. 1989), *cert. denied*, 493 U.S. 1056 (1990).

### A.   Municipal Liability

Municipalities are among those "persons" to whom § 1983 applies.  *Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 691-94 (1978); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989).  Municipal liability must rest on the actions of the municipality, and not the actions of the employees of the municipality.  *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997); *Ortez v. Washington County*, 88 F.3d 804, 811 (9th Cir. 1996).  As such, a plaintiff must go beyond the *respondeat superior* theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local government unit.  *Id.*

Plaintiff's allegations cannot reasonably be construed to involve an alleged official policy or custom.  *See City of Canton,*

8 - OPINION AND ORDER -

*Ohio v. Harris*, 489 U.S. 378, 388-90 (1989); *Monell*, 436 U.S. at 690-91.  Accordingly, Plaintiff's claims against Defendants City of Portland and City of Portland Police must be dismissed on the basis they fail to state a claim upon which relief may be granted under 42 U.S.C. § 1983.

    **B.**    **Lack of Personal Involvement**

Liability under § 1983 arises "only upon a showing of personal participation by the defendant" in the alleged constitutional deprivation.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Arnold v. Int'l. Business Machines, Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).  Liability may also be imposed if the defendant sets into "'motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'"  *Gini v. Las Vegas Metropolitan Police Dept.*, 40 F.3d 1041, 1044 (9th Cir. 1994) (quoting *Merritt v. Mackey*, 827 F.2d 1368, 1371 (9th Cir. 1987)).

"'A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"  *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987)), *cert. denied*, 502 U.S. 1074 (1992); *Larez v. City of Los Angeles*, 946

9 - OPINION AND ORDER -

F.2d 630, 646 (9th Cir. 1991); *Taylor*, 880 F.2d at 1045. However, it is well established that § 1983 does not impose liability upon state officials for the acts of their subordinates under a *respondeat superior* theory of liability." *Monell,* 436 U.S. at 691-94.

Plaintiff does not allege facts supporting a claim that Defendant Tom Potter or Defendant Derrick Foxworth were in any way personally involved in Plaintiff's arrest. Accordingly, Plaintiff's claims against these Defendants must be dismissed because Plaintiff fails to state a claim against them upon which relief may be granted under 42 U.S.C. § 1983.

## II. **Excessive Force - Qualified Immunity**

The defense of "qualified immunity" protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This rule "'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" *Burns v. Reed*, 500 U.S. 478, 494-95 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The required first step in a qualified immunity analysis "is to consider the materials submitted in support of, and in

10 - OPINION AND ORDER -

opposition to, summary judgment, in order to decide whether a constitutional right would be violated if all facts are viewed in favor of the party opposing summary judgment." *Jeffers v. Gomez*, 267 F.3d 895, 909 (9th Cir. 2001) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

If a constitutional violation could be made out on a favorable view of the submissions before the court, "the next, sequential step is to ask whether the right was clearly established." *Id.* Finally, if the law governing the state official's conduct was clearly established, the court must inquire whether a reasonable state official could have believed his conduct was lawful. *Jeffers*, 267 F.3d at 910. In the first step of the qualified immunity analysis, the Court must determine whether Defendants violated Plaintiff's constitutional rights. Claims that law enforcement officers used excessive force in the course of an arrest "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Motley v. Parks*, 432 F.3d 1072, 1088 (9th Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)). "Determining whether the force used to effect a particular seizure is 'reasonable' under the

11 - OPINION AND ORDER -

Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation and citations omitted).

The Court's consideration of whether a particular use of force is reasonable, "must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id*. at 396-97. Not every push or shove, even if it may later seem unnecessary in hindsight, violates the Fourth Amendment. *Id*.

Proper application of the reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. The reasonableness inquiry in excessive force cases is an objective one. The Court must determine whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation, and without the "20/20 vision of hindsight." *Id*. The need for such

12 - OPINION AND ORDER -

balancing means that "summary judgment . . . in excessive force cases should be granted sparingly."  *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002).  Nevertheless, summary judgment may be appropriate when the intrusion on a plaintiff's Fourth Amendment rights is minimal and objectively justified by the circumstances. *Jackson v. City of Bremerton*, 268 F.3d 646, 651-53 (9th Cir. 2001).

The facts in this case are essentially undisputed. Plaintiff's father told police officers Plaintiff assaulted and threatened him, and that Plaintiff was armed with a knife.  When the officers located Plaintiff, Plaintiff refused their repeated commands to show his hands.  Plaintiff made threatening moves toward the police dog, and upon being shot with the less lethal bean bag, moved toward Officer Brown.  Plaintiff refused to allow the officers to handcuff him, and grabbed Officer West by the wrist in an apparent attempt to pull him to the floor.  Plaintiff continued to struggle, and the officers were able to handcuff him only after using reverse a wrist lock and forcing Plaintiff's shoulder to the floor.

The only reasonable inference to be drawn from this record is that the use of force applied by the officers in this case was commensurate with the severity of the crime apparently committed by Plaintiff and with Plaintiff's failure to comply with repeated commands in tense and rapidly evolving circumstances.  Indeed,

13 - OPINION AND ORDER -

Plaintiff presented a serious threat to the safety of arresting officers when he actively resisted arrest.  Considering the totality of the circumstances even in the light most favorable to Plaintiff, the officers' legitimate interest in ensuring their safety, given the threat Plaintiff posed, warranted the amount of force they used in effecting Plaintiff's arrest.  *See e.g.*, *Johnson v. Woodard*, 340 F.3d 787, 792-93 (9th Cir. 2003) (finding officer's pulling and twisting of armed bank robbery suspect to extract him from car and take him into custody following high-speed car chase and crash objectively reasonable as a matter of law); *Jackson*, 268 F.3d at 650-51 (finding no excessive force where officer pushed suspect to ground for purpose of handcuffing, placed knee in her back despite known preexisting back and shoulder injuries, sprayed her hair with chemical irritant, and turned up squad car heat on 90-degree day); *Forrester v. City of San Diego*, 25 F.3d 804, 806-07 (9th Cir. 1994) (finding use of pain compliance techniques on passively-resisting abortion protesters, resulting in bruises, pinched nerve, and broken wrist, was objectively reasonable), *cert. denied*, 513 U.S. 1152 (1995); *James v. Feduloff*, 2005 WL 2233716 (N.D. Cal., Sept. 14, 2005) (finding no excessive force where officers broke suspect's arm by using batons to break out car window where suspect refused officer commands to show hands following high speed chase).  In any event,

14 - OPINION AND ORDER -

there is not any admissible evidence in the record from which a triable issue of fact can arise as to the elements of Plaintiff's § 1983 claim.

The Court finds Defendants McDaniel, Brown, Edgecomb, and West did not violated Plaintiff's Fourth Amendment rights.  As such, the Court need not reach the immunity inquiry.  *Saucier*, 533 U.S. at 201.  Because no genuine issue of material fact exists as to the reasonableness of Defendants' actions, they are entitled to judgment as a matter of law.

### III. State Law Claim

Finally, Plaintiff alleges supplemental state law claims of false imprisonment and slander.  As noted, however, Plaintiff failed to provide a tort claim notice to the City of Portland. *See* Or. Rev. Stat. § 30.275.  Moreover, the sole cause of action for any tort by individual state officers or employees shall be an action against the public body only.  Or. Rev. Stat. § 30.265(1). Accordingly, Defendants are entitled to summary judgment on Plaintiff's state law claims.

///

///

///

///

///

15 - OPINION AND ORDER -

## CONCLUSION

For these reasons, the Court GRANTS Defendants' Motion for Summary Judgment (#62) and DISMISSES this action, with prejudice.

IT IS SO ORDERED.

DATED this  9th   day of June, 2006.

                               /s/ Anna J. Brown
                               ANNA J. BROWN
                               United States District Judge